NATHAN G. MANDEL AND ANOTHER v. ATLAS ASSURANCE COMPANY, LTD.[1]

March 10, 1950.

No. 35,052.

[1]Reported in 41 N. W. (2d) 590.

*William W. Fink*, for appellants.
*O'Brien & Kronebusch*, for respondent.

KNUTSON, JUSTICE.

This is an appeal from an order denying an alternative motion for judgment notwithstanding or for a new trial after a verdict rendered in favor of defendant.

On June 16, 1947, defendant issued a policy of insurance covering personal property of plaintiffs, Nathan G. Mandel and Adeline Mandel, his wife, including a diamond ring specifically described in the policy. Insofar as coverage of the diamond ring is concerned, the policy provides:

"1. Personal property owned, used or worn by the persons in whose name this policy is issued, hereinafter called the Assured, and members of the Assured's family of the same household, while in all situations, except as hereinafter provided.

"PERILS INSURED

"2. All risks of loss of or damage to property covered except as hereinafter provided.

"JEWELRY SCHEDULE:

"1. $825.00 on one lady's diamond ring, center stone .67 carat in platinum mounting with 2 F. C. Melee about .04 each and 6 F. C. Melee about .01 caret each.

"The assured shall immediately report to this Company or its Agent every loss or damage which may become a claim under this Policy, and shall also file with the Company or its Agent within ninety days from date of loss, a detailed sworn proof of loss. Failure by the Assured either to report the said loss or damage or to file such written proofs of loss as herein provided shall invalidate any claim under this Policy.

"Unless otherwise provided in form attached, this Company shall not be liable beyond the actual cash value of the property at the

time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.

"In case the Assured and this Company shall fail to agree as to the amount of loss or damage, the same shall be ascertained by two competent and disinterested appraisers, the Assured and this Company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately the sound values and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of loss; the parties thereto shall pay the appraisers respectively selected by them, and shall bear equally the expense of the appraisal and umpire."

On April 8, 1948, plaintiffs' diamond ring was damaged by chipping. There is no dispute as to the damage to the diamond. The loss was properly reported to defendant, and claim was made for payment. Thereafter, negotiations for settlement were carried on between Mr. Mandel and Daniel P. Sheridan of Western Adjustment & Inspection Company, who represented defendant. To begin with, defendant claimed the right to replace the diamond with one of equal value, and plaintiffs demanded payment in money. It is the contention of defendant that after some negotiations Mr. Mandel agreed that settlement could be made by replacing the diamond with one of like quality and value. Plaintiffs dispute such contention, claiming that no such agreement was ever made or consummated and that defendant is liable for the value of the diamond in money. It is the further claim of plaintiffs that any oral agreement to settle the loss in a manner different from that specified in the insurance contract could not be shown, and also that if any such parol agreement could be shown the court erred in failing to

instruct the jury on the question of waiver by plaintiffs of the express terms of the policy.

That the insurance policy involved required payment in cash rather than replacement in kind and that defendant had no right to demand to be permitted to replace the damaged diamond rather than to settle for cash seems now to be conceded. It seems that defendant has abandoned the position taken at the outset that it had a right to settle the loss by replacement in kind. However, even though it be true that the policy required payment in money, we see no reason why the parties could not have mutually agreed upon some other manner of settlement after the loss had occurred.

■ The general rule that contracts within the statute of frauds cannot be modified, contradicted, or altered orally is subject to the exception that an agreement for a substituted method of performance may be shown by parol. Bemis Bros. Bag Co. v. Nesbitt, 183 Minn. 577, 237 N. W. 586; Brooks v. Arkansas-Louisiana Pipe Line Co. (8 Cir.) 77 F. (2d) 965; 6 Dunnell, Dig. & Supp. § 8855; Durdahl v. Tostenson, 150 Minn. 415, 185 N. W. 494; Annotations, 17 A. L. R. 36, 29 A. L. R. 1097, 80 A. L. R. 543.

■ The question before us is simply this: Does the evidence sustain a finding that plaintiffs did so agree to settle the loss by replacement in kind?

The evidence is clear that at the beginning Mr. Mandel objected to any settlement in kind. The testimony of Daniel P. Sheridan in that respect was as follows:

"Q. You, yourself, knew, didn't you, that Mr. Mandel was insisting on cash money, not a diamond?

"A. That may be, yes, I did.

"Q. You knew that?

"A. Yes.

"Q. And you knew it all the time?

"A. Yes.

"Q. Yet you wanted to keep following instructions, trying to get him to take a diamond rather than money?

"A. Yes, because we could have it done cheaper.

"Q. Because you could have it done cheaper?

"A. That is right."

Defendant relies almost entirely upon the testimony of Sheridan to establish its claimed agreement. At best, such testimony is far from satisfactory. The following testimony is probably the strongest evidence of an agreement to be found in the record:

"Q. I will ask you what did he say to that?

"A. All right.

"Q. Your answer—?

"A. I think he said all right.

"Q. Do you remember him making that answer?

"A. Yes.

"Q. Well, do you recall definitely that he told you it was all right, or not, do you?

"A. Yes, it was all right. I remember him saying that.

"Q. You think he said all right?

"A. That's my recollection. When he said first he objected to my taking it to Mr. Silver, I told him where I was taking it because I wanted to be fair with him through the whole thing."

The difficulty with defendant's position is that the record shows unmistakably that, even if there was some sort of agreement that the loss might be settled by replacement of the diamond with one of like value and quality, plaintiffs were to have the final approval and acceptance of any diamond that might be selected. The agreement at best was a conditional one, subject to final acceptance by plaintiffs, and the record is completely barren of any evidence showing such acceptance. The following testimony of Sheridan establishes conclusively the fact that the agreement, if there was any, was subject to the acceptance of plaintiffs:

"Q. After you rejected the jeweler at Rogers, what did Mr. Mandel say about Silver's?

"A. I think it was once that he spoke following that and he told me he could see no objection if we were able to replace the stone

with one of like kind and quality that he had, that was damaged and I told him that they would have an opportunity to determine whether or not it was such a stone of equal or the same type.

"Q. What did he say then?

"A. At that time I think he said all right."

On cross-examination Sheridan testified:

"Q. Well, didn't he tell you that, according to your testimony, that before the ring was acceptable, he wanted to have an opportunity to examine the ring?

"A. Yes.

"Q. He told you that?

"A. Yes.

"Q. He said, he suggested you take it back to Bullard's who was to examine the ring. He told you they were to examine the ring before it was acceptable, and for Mr. Kohlsaat to examine it?

"A. I took it back to Mr. Kohlsaat at Mr. Mandel's request.

"Q. You say that Mr. Mandel objected in the first place to you going to Silver's?

"A. Yes.

"Q. Well, why did you go to Silver's if he objected to it?

"A. That was because, following a discussion with him about it, after I explained to him he would have an opportunity to have the thing checked to determine if it was equal value, of like kind and quality and he said, all right."

Defendant knew that the ring belonged to Mrs. Mandel, but she was not consulted about the matter at all until after a diamond had been selected for her, at which time she said that she would choose her own diamond. It is easy to understand the reason why the owner would wish to reserve the right of final acceptance and approval of an object such as a diamond ring. In the selection of a diamond to replace the one which had been in an engagement ring, there might well be many considerations which would enter into the final decision, aside from actual intrinsic money value. To

select for a woman such a personal item as a diamond ring might well be as difficult as to select a new hat for her. The money value of the material in the one might well be equal to or exceed the other, but who except the woman who is to wear the hat would be able to say that the one was as valuable as the other.

We do not believe that the evidence before us is sufficient to sustain a finding that there was a complete and executed agreement to permit defendant to settle the loss here involved by replacement of the damaged diamond with one of like money value and quality. At best, there was a conditional agreement to permit defendant to replace the diamond, provided the replacement met with the approval of plaintiffs. There never has been any such approval; hence the agreement has never come into operation.

Plaintiffs' motion for a directed verdict that the jury determine the amount of the loss should have been granted. The case will be reversed, with a new trial granted on the question of damages alone and with instructions to enter judgment for plaintiffs for the amount of the loss so determined.

Reversed.